835

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NUMBER: 801-977                                                      DIVISION "I"

TODD MORGAN

VERSUS

TARA FOTO, LOUISIANA CHILDRENS MEDICAL CENTER d/b/a LCMC HEALTH, and CHILDREN'S HOSPITAL ANESTHESIA CORP. d/b/a LCMC ANESTHESIA CORP.

FILED: _____        _____
                                              DEPUTY CLERK

## PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Todd Morgan, (hereinafter referred to as "Morgan"), a person of full majority of age domiciled St. Tammany Parish, State of Louisiana, who respectfully avers upon information and belief as follows:

I.

Made Defendants herein are:

> Tara Foto, (hereinafter referred to as "Foto"), who upon information and belief, is a Louisiana domicile, employed as Senior Corporate Counsel by LCMC Health, providing in-house legal counsel.
>
> Louisiana Children's Medical Center, d/b/a LCMC Health, (hereinafter referred to as "LCMC Health"), which upon information and belief is a Louisiana registered non-profit corporation incorporated under the laws of the State of Louisiana, with its principal place of business in the State of Louisiana. LCMC Health is engaged in the business of providing healthcare and medical services and, upon information and belief, is authorized to provide healthcare and medical services to patients.
>
> Children's Hospital Anesthesia Corp., d/b/a LCMC Health Anesthesia Corp., (hereinafter referred to as "LCMC Anesthesia"), which upon information and belief is a Louisiana registered non-profit corporation incorporated under the State of Louisiana with its principal place of business in the State of Louisiana. LCMC Anesthesia is engaged in the business of providing anesthesia services during medical procedures and, upon information and belief, is a subsidiary of LCMC Health, authorized to provide anesthesia services during medical procedures.

24th E-Filed: 12/04/2019 09:18:23 Case: 801977 Div-I Atty:027838 CHRISTOPHER K LEMIEUX

EXHIBIT 1

## JURISDICTION AND VENUE

II.

Venue is proper in this Court, pursuant to Article 74 of the Louisiana Code of Civil Procedure because the offenses, hereinafter defined, occurred in Jefferson Parish.

## BACKGROUND

III.

Morgan asserts causes of action under La. Civ. Code art. 2315 for: bad faith breach of contract, breach of contract, and defamation.

IV.

Additionally, Morgan asserts a cause of action under La. R.S. §§15:1303(A), 1307(B), and 1312(A) for the willful and knowing use of the contents of an illegally intercepted oral communication; the willful and knowing disclosure of an illegally intercepted oral communication; and the unlawful dissemination of the contents of an electronic communication.

V.

Morgan is a Certified Registered Nurse Anesthetists ("CRNA"), licensed in Louisiana since 2014.

VI.

On April 3, 2015, Morgan was hired to perform CRNA services for Parish Anesthesia d/b/a Crescent City Anesthesia. Crescent City Anesthesia held the contract to staff West Jefferson Medical Center (hereinafter referred to as "WJMC") with CRNAs. The Crescent City Anesthesia contract with WJMC expired on March 5, 2017.

VII.

On March 6, 2017, Morgan was hired to perform CRNA services by LCMC Anesthesia at hospitals administered by LCMC Health, including WJMC.

VIII.

Upon hiring by LCMC Anesthesia, Morgan was given a copy of the "LCMC Health Handbook." The Handbook set forth the conditions of employment and the rights afforded to employees.

IX.

An employer is bound by the policies in its employee handbook when the policy amounts to a contractual obligation and the four requirements for a contract are met. *Fairbanks v. Tulane*

*Univ.*, 98-1228, p. 8 (La. App. 4 Cir. 3/31/99); 731 So.2d 983, 988. The four requirements of a contract are: 1) capacity to contract; 2) mutual consent; 3) certain object; and 4) lawful cause. La. Civ. Code arts. 1918, 1927, 1966, 1971.

X.

The Handbook creates a contract whereby Morgan was obligated to perform employment services to LCMC Health; in return, LCMC Health was obligated to follow the policies and procedures of the handbook. Morgan and LCMC Health have capacity to contract. Morgan gave implied consent to the terms of the contract by following the procedures set forth and diligently working for LCMC Health for over two years. The contract for employment has a lawful cause.

XI.

The Handbook requires the hospital to investigate reports of inappropriate behavior. Article 402 reads: "LCMC strives to maintain a workplace that is free from discrimination, harassment, and other inappropriate behavior. Such behavior will be investigated and reviewed against our policies and procedures."

XII.

Article 404 of the handbook states LCMC Health follows a "progressive disciplinary action process" and lists a number of terminable first offenses, including "interfering with a formal investigation, including but not limited to providing false information to an investigator and/or hiding, removing or destroying evidence or documentation."

XIII.

Under the terms of the contract and doctrine of good faith, LCMC Health was obligated to conduct a good faith investigation into the alleged inappropriate behavior before terminating Morgan on July 22, 2019.

XIV.

LCMC Health is vicariously liable for Foto's tortious actions. Foto's actions occurred while she was working in the scope of her employment, her actions were incidental to the performance of her duties, her actions occurred on the employer's premises, and her actions occurred during the hours of employment.

24th E-Filed: 12/04/2019 09:18:23 Case: 801977 Div-I Atty:027838 CHRISTOPHER K LEMIEUX

## *THE INCIDENT*

### XV.

Petitioner reiterates and incorporates by reference the allegations contained in paragraphs I through XIV.

### XVI.

On Thursday, July 11, 2019, Morgan was assigned to perform CRNA duties for a patient at WJMC, 1101 Medical Center Blvd., Marrero, La, 70072 in Jefferson Parish, State of Louisiana. The hospital is and was administered by LCMC Health and under contract with LCMC Anesthesia for CRNA services.

### XVII.

The Patient was scheduled to undergo minor surgery requiring Monitored Anesthetic Care ("MAC"), an anesthetic procedure which incapacitates the patient rendering them unconscious and unaware of their surroundings. A MAC requires constant observation and vigilance by the CRNA, who is positioned at the head of the patient and responsible for maintaining airflow to the patient's lungs by manually adjusting the patients head and neck during the surgery. Aside from monitoring the patient's head position, MAC requires the CRNA to constantly monitor the patient's oxygen saturation, heart rate, respiration, and blood pressure.

### XVIII.

The Patient willfully intercepted the operating room's oral communications by using a recording device hidden in her hijab, a religious headdress. The Patient was not a law enforcement officer with a court order allowing her to record oral communications without the consent of the parties.

### XIX.

The Patient was unconscious during the procedure and incapable of observing the medical professionals in the operating room. The Patient was incapable of being a participant, observer, or consciously present for the intercepted conversation because she was under a MAC. Further, the Patient did not obtain consent to record the conversations form any of the participants of the oral communication.

### XX.

Toward the end of the procedure, remarks were made by Operating Room Staff regarding the Patient's piercings, tattoo, hijab, age, and religious beliefs.

24th E-Filed: 12/04/2019 09:18:23 Case: 801977 Div:I Atty:027838 CHRISTOPHER K LEMIEUX

XXI.

The Patient's hijab included a niqab, a veil which covered her nose and mouth; the niqab complicated Morgan's responsibilities at the head of the Patient and required greater vigilance than usual because Morgan could not rely on visual cues normally observed from a patient's face, head angle, etc. Morgan, nevertheless, was respectful of the Patient's religious beliefs; he completed the procedure without the aid of these visual cues by minimally repositioning the Patient's niqab and relying on his expertise as a CRNA.

XXII.

At no time did Morgan leave the head of the Patient and abandon his MAC responsibilities during the procedure. He was never in a position to observe the Patient's vagina and never made any effort to view the Patient's vagina.

XXIII.

On the evening of Thursday, July 11, 2019, the Patient disclosed the contents of the illegally obtained oral communication (hereinafter "illegal recording") to WJMC / LCMC Health in an emailed complaint detailing her interpretation of what the recording demonstrates. The Patient additionally included an audio version of the illegal recording with her emailed complaint. The illegal recording was not disclosed to LCMC Anesthesia by the Patient.

XXIV.

The Patient's complaint misattributes several statements spoken by different males to a single male speaker, as well as misinterprets certain sounds on the illegal recording. Her understanding is limited to inferences drawn from the sounds of the illegally taped procedure. The letter warns the Patient will "seek justice," threatening LCMC Health a civil suit.

### *THE INVESTIGATION*

XXV.

Petitioner reiterates and incorporates by reference the allegations contained in paragraphs I through XXIV.

XXVI.

On July 17, 2019, Morgan learned of the complaint and was asked to attend a "fact-finding" meeting at WJMC with: Tara Foto, counsel for LCMC Health; Floyd Riedlinger, Director of Human Resources for West Jefferson Medical Center; Eric Adams, Director of Peri-Operative Services for West Jefferson Medical Center; and MaryAnn O'Brien, Compliance Officer for

LCMC Health. The interview was led by Foto, who introduced herself as lead counsel and presented herself as the main "fact-finder." She further stated that the other persons present were there to assist her. None of the fact-finders were employees of LCMC Anesthesia.

XXVII.

Foto, Riedlinger, Adams, and O'Brien misrepresented the disciplinary hearing as a "fact-finding" meeting, depriving Morgan of his right to counsel.

XXVIII.

The investigators began the meeting by warning Morgan to be truthful and transparent during the interview and that lying would have negative consequences, again concealing or minimizing that this was actually a disciplinary hearing and denying Morgan his right to counsel. They stated they had access to the illegal recording which they would use to corroborate his report.

XXIX.

Foto had access to the Patient's medical file which showed the Patient was under complete sedation during the operation. Additionally, Morgan confirmed the Patient was unconscious, under complete sedation during the MAC procedure. These facts, coupled with Foto's legal expertise, provides both actual and constructive knowledge that the oral communication was illegally obtained by a third-party without consent to record the communication.

XXX.

Morgan was transparent and truthful, answering all questions to the best of his ability without the benefit of hearing the illegal recording.

XXXI.

Morgan told investigators that throughout the entire surgery he was positioned at the head of the Patient and responsible for maintaining airflow to the Patient's lungs by manually adjusting her head and neck during the MAC procedure; because of Morgan's duties, he could not leave the head of the Patient to engage in the alleged behavior while also maintaining airflow to the Patient's lungs by manually adjusting her head and neck. He further stated that from his position at the head of the Patient, he could see the top of her pubic bone, but not the Patient's vagina, and that he did not have any independent recollection of glancing toward the Patient's pubic area during the procedure.

24th E-Filed: 12/04/2019 09:18:23 Case: 801977 Div:I Atty:027838 CHRISTOPHER K LEMIEUX

XXXII.

Foto asked Morgan if he saw the Patient's vagina, as alleged in the Patient's complaint to LCMC Health. Morgan truthfully denied seeing the Patient's vagina because he was never in a position to view the Patient's vagina.

XXXIII.

Morgan repeatedly requested to listen to the illegal recording being used against him as evidence of misconduct. The investigators denied his requests, telling Morgan he could not have a copy of, or listen to, the illegal recording.

XXXIV.

Despite refusing Morgan's request, upon information and belief, Foto allowed another Operating Room Staff member, X-Ray Technician, Mr. Lamar Wallace, to listen to portions of the illegal recording, potentially attributing his own actions or statements to Morgan.

XXXV.

The meeting concluded and Morgan was informed he could not work at WJMC while the incident was under investigation.

XXXVI.

The other Operating Room Staff were interviewed separately from Morgan by Foto, *et al.*, on July 17, 2019. Upon information and belief, at least two other Operating Room Staff gave reports which corroborated Morgan's; they stated Morgan did not and could not leave the head of the Patient. These witnesses explained that it would be impossible for the illegal recording to demonstrate Morgan engaging in inappropriate behavior because he never left the head of the bed as was alleged could be heard on the illegal recording. They are circulator nurse, Ashley Helmer; and surgical technician, Codi Gauthier.

XXXVII.

Upon information and belief, there was more than sufficient evidence presented during the July 17, 2019 fact-finding meetings to preclude a good faith investigator from accepting the Patient's version of events.

XXXVIII.

The prime piece of evidence of alleged misconduct which caused Foto and LCMC Health to open the investigation, and was being used in the investigation, was illegally obtained by the Patient.

XXXIX.

Foto had constructive knowledge that the Patient's interpretation of the contents of the tape and her own conclusions about Morgan's actions were not corroborated by the facts, including: information contrary to Foto's conclusions gleaned from the Patient's medical file regarding the MAC procedure and Morgan's duties at the head of the Patient; information contrary to Foto's conclusions gleaned during their July 17, 2019 fact-finding meetings with operating room staff; and information contrary to Foto's conclusions gleaned from Morgan's own report given at the fact-finding meeting regarding the procedure.

XL.

Foto ignored these facts and blindly accepted the Patient's version of events by using her illegal recording as the primary evidence against Morgan. By ignoring other evidence she attributed impossible actions to Morgan, concluding that during a portion of the procedure when the Patient was most at risk of MAC-related complications and the CRNA's duties require utmost vigilance and attention, Morgan left the head of the Patient; lifted the Patient's dressings causing the sound of moving fabric; looked at the Patient's vagina; and gasped.

XLI.

On July 22, 2019, Morgan met with Riedlinger, Jay Buras from LCMC Anesthesia, and Terri Taylor-Joseph, Human Resources director for LCMC Health. At the meeting Riedlinger told Morgan his employment was being terminated by LCMC Anesthesia for "lying during an investigation," a terminable offense listed in the LCMC Handbook. This was the first time a representative of LCMC Anesthesia was present for a meeting with Morgan.

XLII.

Foto and LCMC Health, including Riedlinger, knew or should have known the tape was illegally obtained. Regardless of their constructive knowledge, Foto and LCMC Health knowingly and willfully disclosed the contents of the illegal recording to the staff of LCMC Anesthesia.

XLIII.

Foto and LCMC Health knew or should have known that their investigation was done in bad faith and drew erroneous conclusions. Regardless of their constructive knowledge, Foto and LCMC Health maliciously disclosed information they knew to be false to LCMC Anesthesia with certain knowledge Morgan would suffer serious damage, including damage to his reputation within the medical community, the loss of employment, and financial injury.

XLIV.

Despite their knowledge of these facts, Riedlinger represented to Morgan that the illegal recording conclusively showed that Morgan left the Patient's head; lifted the dressings covering her vagina, creating the sound of moving fabric; and looked at the Patient's vagina, audibly gasping.

XLV.

Taylor-Joseph told Morgan the decision was "appealable" but that it would not matter because the decision was final.

XLVI.

Following the meeting on July 22, 2019, Morgan received an email from Riedlinger entitled "Corrective Action Form" referencing an email attachment with the subject "Conclusion of the Investigation." The Corrective Action Form lists July 17, 2019 as the date of incident and "Code of Conduct Violation" as the reason for termination. The referenced attachment reads:

> "An audio recording was produced as part of the investigation. On the recording, you are discussing the patient with Ashley Hunter [sic], RN, ask to look, a sheet moves, you gasp, and a conversation about the patient's pubis continues between you and Ashley.
>
> The audio clearly contradicts the information provided when interviewed. This violates our Code of Conduct which lists 'Interfering with a formal investigation, including but not limited to providing false information to an investigator and/or hiding, removing or destroying evidence or documentation' as an offense for immediate discharge. Based on the information outlined above, your employment is terminated effective immediately."

XLVII.

Later on July 22, 2019, LCMC Anesthesia changed the reason for Morgan's termination. That afternoon, Taylor-Joseph emailed a Louisiana Workforce Commission Separation Notice to Morgan, listing the reason for termination as "Gross Misconduct." Gross Misconduct is not included as a terminable offense in the Handbook Article 404; it was not the reason given during Morgan's initial meeting with LCMC Anesthesia; nor was it the reason listed on LCMC Health's Corrective Action form.

XLVIII.

Morgan called Taylor-Joseph regarding the reason for termination listed as "Gross Misconduct." Taylor-Joseph stated that LCMC Health and LCMC Anesthesia would report Morgan to the Louisiana State Board of Nursing by July 26, 2019, recommending Morgan self-report before July 25, 2019.

XLIX.

Morgan called Riedlinger to schedule a meeting so that he could hear the portion of the illegal recording that Foto, LCMC Health, and LCMC Anesthesia used as evidence against him. Riedlinger did not answer and Morgan left a voicemail. Morgan would call Riedlinger and leave unreturned messages again on July 23, 2019, and July 24, 2019. Riedlinger did not answer Morgan's calls or allow him to hear the illegal recording.

L.

On July 25, 2019 Morgan's counsel sent a cease and desist letter to Foto, Riedlinger, O'Brien, and LCMC Anesthesia. The letter demanded Morgan's reinstatement at LCMC Anesthesia; to stop engaging in defamatory, negative, and untrue communications regarding Morgan, including but not limited to allegations of "gross misconduct"; and to preserve all documents, recordings, and communications relating to the incident or Morgan's termination. The letter makes clear that Morgan was prepared to file suit.

LI.

On July 30, 2019, in response to the July 25, 2019 Cease and Desist letter from Morgan's counsel, Foto reached out to schedule a conference call with Morgan's counsel for July 31, 2019.

LII.

During the July 31, 2019 conference call, Foto made multiple erroneous statements which showed her investigation ignored evidence that did not support her interpretation of the illegal recording, which was being used to justify terminating Morgan.

LIII.

Foto falsely stated "[Morgan] did not give the Patient respectful competent care and does not have witnesses to support his report." Foto had access to the Patient's medical file and knew or should have known that the procedure was successful, and the Patient received competent medical care. Further, upon information and belief, other Operating Room Staff members, including Ashley Helmer, corroborated Morgan's position during their fact-finding interviews on July 17, 2019.

LIV.

Foto falsely stated she had written witness statements which were submitted to LCMC Anesthesia as evidence against Morgan, which corroborated her interpretation of the illegal recording. Morgan's counsel requested production of the written witness statements. Foto told

Morgan's counsel she would not produce the written statements, but she would discuss the possibility of producing them later with LCMC Health and LCMC Anesthesia. On August 2, 2019, Foto confirmed she did not have, and never had written witness statements.

LV.

Foto falsely stated that "the Patient was under very simple conscious sedation." Foto had access to the Patient's medical file containing information regarding the procedure. Accordingly, she knew or should have known that her statement misrepresented the type of procedure, allowing her to falsely attribute certain actions to Morgan. The Patient was under MAC anesthesia, a significantly different procedure from Conscious Sedation. MAC requires the CRNA to be at the head the Patient, maintaining airflow to the Patient's lungs by manually adjusting the Patient's head and neck to monitor the Patient's oxygen saturation, heart rate, respiration, and blood pressure levels. Upon information and belief Foto's intentional mischaracterization of the procedure as a "conscious sedation" was a knowing and tortious misrepresentation of the illegal recording to characterize the patient as conscious during the making of the recording and to justify her use and dissemination of the tape to third parties.

LVI.

Foto falsely stated that Morgan "denied looking at all" at the Patient's pubic area, mischaracterizing his testimony as "lying during an investigation." This statement is a misrepresentation of Morgan's testimony during the July 17, 2019 meeting, where he denied leaving the head of the Patient and looking at the Patient's vagina, but from his position he could see the top of her pubic area and did not have an independent recollection of looking.

LVII.

Foto warned that she, LCMC Health, and LCMC Anesthesia planned to further disclose, disseminate, and distribute the contents of the illegal recording to the Louisiana State Nurses Board, stating: "We will provide audio to state boards, I promise you." On October 26, 2019 Morgan received a letter from the Louisiana State Board of Nursing indicating they were in possession of the illegal recording.

LVIII.

Foto intentionally and falsely stated that the conversation on the illegal recording was between Morgan and a female. Foto knew or should have known form her fact-finding interviews that the primary male voice on the recording was a third medical team member, x-ray technician

Lamar Wallace, and not Morgan. Upon information and belief, other Operating Room Staff members corroborated Morgan's position when interviewed on July 17, 2019.

LIX.

Foto stated "you can hear sheets move" on the illegal recording as evidence Morgan lifted the Patient's coverings to examine her vagina. The sound was actually produced as the Operating Room Staff transitioned the Patient from the operating room table onto a gurney, as is standard. As this happened, toward the end of the procedure when MAC complications are most frequent, Morgan stayed at the head of the Patient and continued to reposition her head in order to maintain airflow to her lungs. His hands were positioned near the microphone hidden in the Patient's hijab, so as the Operating Room Staff lifted the patient, his hands brushed against the recording device, creating the sound. Foto misattributed this sound at the Patient's head to Morgan lifting the Patient's coverings exposing her vagina.

LX.

On August 2, 2019, over two weeks after Morgan's initial request to hear the illegal recording, Foto allowed Morgan's counsel to listen to a 50 second portion of the illegal recording at a face-to-face meeting.

LXI.

Foto stated that she conducted the interviews during the investigation, indicating to Morgan's counsel that she was the primary investigator.

LXII.

Foto confirmed that she did not have written witness statements, contradicting assertions made during the July 31, 2019 conference call. At the meeting she stated: "I don't have any witness statements, I interviewed people." She also stated she would not be able to produce these statements because: "they don't exist."

LXIII.

On August 6, 2019, additional facts were acknowledged to Morgan's counsel by legal representatives of Foto, LCMC Health, and LCMC Anesthesia. The facts were contrary to their interpretation of the illegal recording and the stated reasons for Morgan's termination.

LXIV.

It was acknowledged that Foto, LCMC Health, and LCMC Anesthesia had identified a second male voice on the recording, contradicting their previous position that Morgan was the sole

male voice heard on the tape. They knew or should have known that this information was contrary to the results of their investigation because they interviewed the second male speaker on July 17, 2019.

LXV.

It was acknowledged that Foto, LCMC Health, and LCMC Anesthesia believed Morgan "may" not have left the head of the Patient. If so, Morgan was truthful during his interview on July 17, 2019.

LXVI.

It was acknowledged that Foto, LCMC Health, and LCMC Anesthesia declined to engage with a company to enhance the clarity of the audio on the illegal recording. They had previously asked Morgan's counsel to refer an expert to clean up the audio; Morgan's counsel recommended a local expert, often used by local law enforcement. Upon receipt of the recommendation, Foto, LCMC Health, and LCMC Anesthesia counsel declined to engage the expert.

LXVII.

It was acknowledged that following the August 2, 2019 meeting, Foto, LCMC Health, and LCMC Anesthesia issued typed witness statements to the other Operating Room Staff for execution, in the attempt to manufacture evidence to corroborate their original and erroneous interpretation of the illegal recording.

LXVIII.

On October 26, 2019, Morgan received a notice dated October 22, 2019 from the Louisiana State Board of Nursing, the regulatory body responsible for licensure of nurses within the state of Louisiana.

LXIX.

The notice reads:

"The Board has information which alleges that you may have acted in violation on of the Nurse Practice Act. This information is in regards to events that occurred on July 17, 2019, while you were employed as an Advanced Practice Registered Nurse at WEST JEFFERSON MEDICAL CENTER in MARRERO, LA. This information indicates that:

On or about July 17, 2019 a concern was brought forward by a patient that you had inappropriately looked at her pubis area and made inappropriate comments about her religious beliefs. According to an audio recording, you are discussing the patient with another staff member and ask to look at the patient's pubis area. On the recording, a sheet is moved, you gasp, and a conversation about the patient's pubis area continues between you and the other staff member.

4852-2054-7245, v. 1

If proven, the above actions constitute violations of the Nurse Practice Act, La. R.S. 37:911 -939 and the rules and regulations promulgated by the Louisiana State Board of Nursing, L.A.C. 46:XLVII.3 10 1-45 17 thereby authorizing the Board to revoke, suspend, probate, limit or restrict your license to practice as a Registered Nurse, to impose a fine of up to $5,000 for each count and to assess costs of the investigation and disciplinary proceedings, or to otherwise discipline you, La. R.S. 37:921 and 925." (emphasis added)

LXX.

Upon information and belief, Foto, LCMC Health, and LCMC Anesthesia further disclosed and disseminated the illegal recording to the Louisiana State Board of Nursing, who received the illegal recording and are currently using it as evidence against Morgan.

LXXI.

Because of Foto, LCMC Health, and LCMC Anesthesia's disclosure and dissemination of the illegal recording to the Louisiana State Board of Nursing, Morgan could be levied with a fine of up to $25,000 along with costs associated with the investigation. Additionally, Morgan's license could be revoked, suspended, probated, or limited.

LXXII.

Foto, LCMC Health, and LCMC Anesthesia's disclosure and dissemination of the illegal recording to the Louisiana State Board of Nursing has further damaged Morgan's reputation amongst his peers in the nursing field and has caused him serious emotional injury.

LXXIII.

LCMC Health is vicariously liable for Foto's tortious actions. Foto's actions occurred while she was working in the scope of her employment, her actions were incidental to the performance of her duties, her actions occurred on the employer's premises, and her actions occurred during the hours of employment.

### *AS TO FOTO AND LCMC HEALTH: UNLAWFUL DISCLOSURE AND DISSEMINATION OF AN ORAL COMMUNICATION IN VIOLATION OF LA. R.S. §§15:1303(A)(3), 1307B*

LXXIV.

Petitioner reiterates and incorporates by reference the allegations contained in paragraphs I through LXXIII.

LXXV.

Defendants, Tara Foto and LCMC Health, are liable to plaintiff as a result of their knowing and willful disclosure of an illegal recording.

14

4852-2054-7245, v. 1

LXXVI.

Defendants, Tara Foto and LCMC Health, are liable to plaintiff as a result of their dissemination or otherwise distribution of an illegal recording.

LXXVII.

It is unlawful for any person to willfully and knowingly disclose to any other person the contents of an illegally intercepted oral communication. La. R.S. §15:1303(A)(3). It is unlawful to disseminate or otherwise distribute any part of the content of an electronic communication to someone other than a police officer investigating the illegal creation of the tape. La. R.S. §1307(B).

LXXVIII.

Foto and LCMC Health had constructive knowledge that the recorded tape was an illegal recording. Despite this, Foto and LCMC Health willfully and knowingly disclosed the contents of the tape to LCMC Anesthesia and the Louisiana State Board of Nursing, in violation of La. R.S. §§15:1303(A)(3).

LXXIX.

LCMC Anesthesia and the Louisiana State Board of Nursing are not a law enforcement agencies and were not investigating the creation of the illegal recording. Despite this, Foto and LCMC Health disseminated or otherwise distributed the contents of the illegal recording to LCMC Anesthesia and the Louisiana State Board of Nursing, in violation of La. R.S. §§15:1307B.

### AS TO FOTO, LCMC HEALTH, AND LCMC ANESTHESIA: UNLAWFUL USE OF AN ORAL COMMUNICATION IN VIOLATION OF LA. R.S. §§15:1303(A)(4)

LXXX.

Petitioner reiterates and incorporates by reference the allegations contained in paragraphs I through LXXIX.

LXXXI.

Defendants, Tara Foto, LCMC Health, and LCMC Anesthesia, are liable to plaintiff as a result of their knowing and willful use of an illegal recording.

LXXXII.

It is unlawful for any person to willfully and knowingly use the contents of an illegally intercepted oral communication. La. R.S. §15:1303(A)(4).

LXXXIII.

Foto, LCMC Health, and LCMC Anesthesia had constructive knowledge that the tape was an illegal recording. Despite this knowledge, they willfully and knowingly used the contents of the illegal recording as evidence against Morgan, in violation of La. R.S. §1303(A)(4).

### AS TO LCMC ANESTHESIA: BAD FAITH BREACH OF CONTRACT

LXXXIV.

Petitioner reiterates and incorporates by reference the allegations contained in paragraphs I through LXXXIII.

LXXXV.

Defendant, LCMC Anesthesia, is liable to Petitioner for bad faith breach of contract.

LXXXVI.

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. Civ. Code Art. 2315. Additionally, good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation. La. Civ. Code Art. 1759.

LXXXVII.

The terms of the handbook created a binding contract between Morgan and LCMC Health Anesthesia requiring a good faith investigation into any incident of misconduct before disciplining an employee. LCMC Health was bound by the doctrine of good faith to conduct a fair investigation giving credence to all legal and available evidence. They breached this duty.

LXXXVIII.

Morgan has been damaged due to LCMC Anesthesia's bad faith breach of contract, suffering from emotional and financial injury.

### AS TO LCMC ANESTHESIA: BREACH OF CONTRACT

LXXXIX.

Petitioner reiterates and incorporates by reference the allegations contained in paragraphs I through LXXXVIII.

XC.

Defendant, LCMC Anesthesia, is liable to Petitioner for breach of contract.

XCI.

The terms of the handbook created a binding contract between Morgan and LCMC Anesthesia requiring an investigation into any incident of misconduct before disciplining an

4852-2054-7245, v. 1

24th E-Filed: 12/04/2019 09:18:23 Case: 801977 Div:I Atty:027838 CHRISTOPHER K LEMIEUX

employee. LCMC Anesthesia breached this duty after terminating Morgan without following the required "escalating discipline procedure."

XCII.

Morgan has been damaged due to LCMC Anesthesia's breach of contract, suffering from emotional and financial injury.

### AS TO FOTO, LCMC HEALTH, AND LCMC ANESTHESIA: DEFAMATION

XCIII.

Petitioner reiterates and incorporates by reference the allegations contained in paragraphs I through XCII.

XCIV.

Defendants, Foto, LCMC Health, and LCMC Anesthesia, are liable to the defendant for defamation.

XCV.

There is a cause of action for defamation when the following four elements are met: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Costello v. Hardy*, 2003-1146, p. 12 (La. 1/21/04); 864 So.2d 129, 139. The attorney-client privilege is waived if attorney-client privilege is being used as a subterfuge to hide a conspiracy, either active or passive, calculated to hinder the administration of justice. *State v. Green*, 493 So.2d 1178, 1182 (La.1986).

XCVI.

Foto and LCMC Health made false statements regarding Morgan's involvement in the incident to LCMC Anesthesia, Morgan's employer. Foto and LCMC Health had constructive and certain knowledge the statements were false. Regardless of this knowledge, they knowingly publicized the information to LCMC Anesthesia. Foto's communications were unprivileged because they were used as a subterfuge to hide an active conspiracy and hinder the administration of justice.

XCVII.

Foto, LCMC Health, and LCMC Anesthesia then made false statements regarding Morgan's actions to the Louisiana State Board of Nursing. Foto, LCMC Health, and LCMC Anesthesia had certain or constructive knowledge that Morgan did not and could not engage in the

4852-2054-7246, v. 1

24th E-Filed: 12/04/2019 09:18:23 Case: 801977 Div:I Atty:027838 CHRISTOPHER K LEMIEUX

alleged inappropriate behavior. Despite this knowledge, they reported their version of events and the illegal recording to the Louisiana State Board of Nursing.

XCVIII.

Because of Foto, LCMC Health, and LCMC Anesthesia's actions Morgan has suffered injury to his reputation, personal humiliation, embarrassment and mental anguish, along with loss of income, past, present, and future.

### PRAYER FOR RELIEF

XCIX.

WHEREFORE, Petitioner, Todd Morgan, prays for a trial by jury and that:

1. This petition for damages pursued under La. Civ. Code Art. 2315 be deemed good and sufficient, and after due proceedings are had, there be a judgement in his favor and against the defendants, LCMC Health, LCMC Anesthesia, and Tara Foto, awarding him all damages reasonable in the premises and/or recoverable under law and/or as specified herein, lost income/benefits past and future, reinstatement, damages to reputation / standing, bad faith breach of contract damages, breach of contract damages, compensatory damages, damages to his reputation, personal humiliation, embarrassment and mental anguish, together with legal interest from date of judicial demand until paid, court costs, attorney's and expert fees, and other costs and/or damages to be proven at trial;

2. This petition for damages pursued under La. R.S. §15:1312(A) be deemed good and sufficient, and after due proceedings are had, there be a judgement in his favor and against the defendants, LCMC Health, LCMC Anesthesia, and Tara Foto, awarding him actual damages, reasonable attorney fees and other litigation costs reasonably incurred, and punitive damages.

Respectfully submitted:

Christopher K. LeMieux (#27383)
Thomas P. Henican (#19292)
1100 Poydras Street, Ste. 1100
New Orleans, Louisiana 70163
Telephone: (504) 581-3300
Facsimile: (504) 581-3310
Email: clemieux@rllaw.com
        thenican@rllaw.com
*Attorneys for Todd Morgan*

SERVICE INSTRUCTIONS ON NEXT PAGE

PLEASE SERVE:

Tara Foto
*Personal Service Only*
533 E. William David Parkway
Metairie, Louisiana 70005

Louisiana Children's Medical Center d/b/a LCMC Health
*Through its registered agent:*
Jody Martin
200 Henry Clay Avenue
New Orleans, Louisiana 70118

CF# 7160 $60.00

Children's Hospital Anesthesia Corp. d/b/a LCMC Health Anesthesia Corp.
*Through its registered agent:*
Jody Martin
200 Henry Clay Avenue
New Orleans, Louisiana 70118

24th E-Filed: 12/04/2019 09:18:23 Case: 801977 Div: I Atty: 027838 CHRISTOPHER K LEMIEUX